Filed 5/27/26  P. v. Walker CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WAYNE LAMONT WALKER,<br><br>    Defendant and Appellant. | C102306<br><br>(Super. Ct. No. 22FE012819) |

Defendant Wayne Lamont Walker was convicted of multiple offenses, including kidnapping and attempted voluntary manslaughter, after he beat and threatened to kill his pregnant ex-girlfriend and drove her to a cliff where he again threatened to kill her. Defendant appeals, arguing the trial court erred in imposing consecutive sentences for the kidnapping and attempted voluntary manslaughter convictions because the offenses were part of a single course of conduct.  Disagreeing, we affirm.

## I.  BACKGROUND

Defendant started dating Victoria in 2020.  In November 2021, after Victoria had told defendant she no longer wanted to be with him, they had an argument.  After they got into a car, defendant threatened to kill Victoria's family and later pointed a gun at her. Police later found the car with a loaded gun inside.

1

In early 2022, Victoria told defendant she was pregnant with his child. They ended the relationship, but defendant occasionally stayed at her apartment. In July 2022, defendant sent threatening text messages to Victoria and returned to Victoria's apartment demanding his money. Defendant threatened to kick the door open and eventually did so. Upon entering, defendant beat Victoria with his hands and kicked her for three to five minutes, during which time Victoria thought she was going to die. Defendant also yelled that he was going to get rid of her.

When defendant walked to the bedroom to get his money, Victoria ran from the apartment and went outside, where she tripped and fell. Defendant caught up with her and beat her with his hands and tried to drag her to his car. When she grabbed onto a tree, he choked her and said he was going to kill her right there. After defendant dragged Victoria into the car, he began to drive and played chicken with other vehicles by going into the opposite lane of travel. He told Victoria he was going to push her off a cliff or drive them all off a cliff. Defendant eventually parked on the side of a road on a cliff near a river.

Defendant told Victoria to get out of the car and said, "today's the day he's going to get rid of [her]," and told her to "walk down to the water so he could get rid of [her]." He walked to retrieve a metal pole that was sticking out of the ground, and she ran to the road and tried to get vehicles to stop. Victoria tried unsuccessfully to jump into the bed of a truck, and she fell to the ground and was run over by the truck. Defendant then beat and kicked her, said her baby was dead and now he was going to really get rid of her, and began trying to drag her.

After other drivers stopped to render aid, defendant got angry with one driver and asked if he wanted to fight before leaving the scene. As a result of the incident, Victoria had a seizure and suffered broken bones in her shoulders, ribs, and back, staying in the hospital for three weeks. Her son K.D. was born via a cesarean section.

In an amended consolidated information, defendant was charged with possession of an assault rifle (Pen. Code, §§ 30510, 30515—count one)[1]; misdemeanor brandishing a firearm (§ 417, subd. (a)(2)—count two); attempted murder of Victoria and K.D. (§§ 664/187, subd. (a)—counts three and four); kidnapping (§ 207, subd. (a)—count five); assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)—count six); and criminal threats (§ 422—count seven). The information also alleged that the offenses involved great violence, great bodily harm, threat of great bodily harm, other acts disclosing a high degree of cruelty, viciousness, or callousness and the victim was particularly vulnerable.

During closing, the People argued that defendant was guilty of attempted murder because he took direct steps towards killing by hitting and choking her outside her apartment, dragging and putting her in his car, driving to a remote location, and going to get a metal pole. The People further argued that "we know that he intended to kill her, because that's what he was telling her the whole time," and during that drive, defendant's "decision to kill, he makes that decision and it solidifies," and "nothing in the defendant's actions indicates anything other than the fact that he was going to kill Victoria and K.D." The People also argued that defendant's choices starting in the apartment and continuing throughout the incident was a "course of conduct" supporting the attempted murder charge.

The jury found defendant guilty of the possession, brandishing, assault, and criminal threats counts (counts one, two, five, six, and seven). It found defendant not guilty of the attempted murder charges in counts three and four but guilty of the lesser included offenses of attempted voluntary manslaughter (§§ 664/192, subd. (a)). The jury found true as to count five (kidnapping) the aggravating factor that the crime involved

---

[1] Undesignated statutory references are to the Penal Code.

3

great violence or other acts disclosing a high degree of cruelty, viciousness, or callousness under California Rules of Court, rule 4.421(a)(1). The jury found true the aggravating factor of a particularly vulnerable victim as to the attempted voluntary manslaughter, kidnapping, assault, and criminal threats counts (counts three, four, five, six, and seven).

The Sacramento County Probation Department (the department) filed a report recommending five years in prison on the kidnapping count (the middle term, count five); eight months on the possession count (one-third the middle term, count one); no additional time on the misdemeanor brandishing count (count two); one year on each attempted voluntary manslaughter count (one-third the middle term, counts three and four); one year on the assault count (one-third the middle term, count six); and eight months on the criminal threats count (one-third the middle term, count seven).

The department found that the crimes and their objectives were predominately independent of each other with separate acts or threats of violence and were committed at different times and separate places, rather than being committed so close in time and place as to indicate a single period of aberrant behavior. The department recommended consecutive sentences on all counts under California Rules of Court, rule 4.425, except for count six, the assault count, because it was an alternative statement to count three (attempted voluntary manslaughter of Victoria) and sentencing should therefore be stayed under section 654. The aggregate recommended sentence was eight years four months.

The People recommended an aggregate sentence of 13 years four months, with the upper term of eight years on the kidnapping count, one year on the brandishing count, one year on each of the attempted voluntary manslaughter counts, one year on the assault count, and eight months on the criminal threats count, all running consecutive because they involved different actions and intents.

The People argued the jury's finding of an additional aggravating factor on the kidnapping count indicated the jury found the kidnapping was a separate act from the

4

attempted voluntary manslaughter. In their view, the kidnapping was complete when defendant stopped the car and the attempted murder began when he told Victoria to get out of the car and went over to grab or remove the pole, at which time his intent was not to kidnap the victim but to kill her. The People further argued that the assault occurred in the apartment, before defendant forced Victoria into the car and the kidnapping began. In response, defendant argued that the People had argued "a course of conduct" "starting from the apartment all the way until trying to grab a pole," and thus the court was required to run the kidnapping and assault sentences concurrent with the attempted voluntary manslaughter of Victoria under section 654.

During this discussion, the court expressed its view that defendant "made a clear threat to kill her, not related to any of the other crimes, and then drove somewhere, and then at least the only evidence that I can see of the attempted vol[untary] man[slaughter] is the point at which the car is stopped and he gets out of the car to get the metal pole …. [¶] … [¶] … to beat her with it …. [¶] … [¶] … [S]he was already kidnapped at the time he threatened to kill her. I mean, that had been—she was already in the car."

The trial court imposed the upper term of eight years on the kidnapping count (count five); eight months on the assault weapon possession count (one-third the middle term, count one); one year for each attempted voluntary manslaughter count (one-third the middle term, counts three and four); and eight months for the criminal threats count (one-third the middle term, count seven).

The court ran the terms on the possession, attempted voluntary manslaughter, kidnapping, and criminal threats counts (counts one, three, four, five, and seven) consecutive, stating: "pursuant to [California Rules of Court, ][r]ule 4.425, the Court finds that these crimes and their objectives were predominantly independent of each other, and under (a)(2), the crimes involved separate acts or threats of violence, and (a)(3), the crimes were committed at different times and separate places, rather than being committed so close in time and place as to indicate a single period of aberrant behavior."

5

The court imposed the upper term of four years for assault (count six) but stayed the term under section 654 because there were elements of the assault that were part of the kidnapping.

The total prison term was 11 years four months. The court imposed 90 days in county jail on the brandishing a firearm misdemeanor count (count two). After the court pronounced the sentences, defendant objected to the imposition of consecutive sentences and "the Court imposing the upper term."

Defendant filed a timely notice of appeal.

## II. DISCUSSION

Defendant contends the trial court erred in imposing consecutive sentences for the kidnapping conviction and the attempted voluntary manslaughter convictions, because those counts arose from the same course of conduct with the same purpose of killing Victoria.[2] We find that the court's imposition of multiple punishments was supported by substantial evidence that defendant formed a separate intent and objective for kidnapping apart from the attempted voluntary manslaughter.

Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." Section 654's proscription against multiple punishment applies where a course of conduct is indivisible and punishable under multiple statutes. (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) The actor's intent and objective determine the divisibility of a course of conduct, and if all offenses share one objective, punishment may be imposed for any of the offenses but not more than one. (*Ibid.*) To permit

---

[2] Defendant does not argue that imposing consecutive sentences for both attempted voluntary manslaughter convictions alone violates section 654, and we do not address that issue.

6

multiple punishments, the evidence must " 'support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced.' " (*Ibid.*) If the defendant "harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

We uphold the trial court's findings if supported by substantial evidence. (See *People v. Fuentes* (2022) 78 Cal.App.5th 670, 680.) We review the evidence in a light most favorable to the trial court's determination and presume every fact the trier of fact could have reasonably deduced from the evidence. (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 271.)

Here, substantial evidence supports the trial court's finding that defendant committed kidnapping and attempted voluntary manslaughter with separate intents and objectives. The court reasonably could have determined that defendant intended to terrorize Victoria and exert power and control over her by kidnapping her. This conclusion is supported by, among things, defendant's "playing chicken" with other cars as he drove, presumably in an attempt to traumatize her. The trial court could have also reasonably determined that, notwithstanding defendant's multiple statements at various times that he was going to kill Victoria, he did not actually have the objective and intent to do so until he parked the car and went to retrieve a metal pole to use it to kill her. Defendant's actions, including pointing a gun at Victoria months prior to the kidnapping, indicate that he did not necessarily want to kill her when he made threats to do so.

This is also supported by the jury's rejection of the attempted murder charge and conviction of attempted voluntary manslaughter. The trial court instructed the jury that an attempted killing that would otherwise be attempted murder is reduced to attempted voluntary manslaughter if the defendant attempted to kill someone because of a sudden

7

quarrel or in the heat of passion.  The jury was further instructed that the defendant attempted to kill someone because of a sudden quarrel or in the heat of passion if, among other things, he intended to kill someone and attempted to do so because he was provoked, and such provocation would have caused a person of average disposition to act rashly and without due deliberation.  Based on these instructions, the jury implicitly found that defendant acted without deliberation in attempting to kill Victoria, contrary to the People's argument during closing that defendant intended to kill Victoria starting in the apartment and continuing throughout the incident.[3]  Thus, the jury's verdict illustrates how the evidence supports the trial court's finding that defendant had different intents and objectives when he kidnapped Victoria and then committed attempted voluntary manslaughter.  We conclude substantial evidence supports the trial court's decision to impose consecutive sentences for those crimes.

## III.  DISPOSITION

The judgment is affirmed.

/S/
_____
RENNER, J.

We concur:


/S/
_____
HULL, Acting P. J.


/S/
_____
BOULWARE EURIE, J.

_____

[3]  The trial court's statement that the attempted voluntary manslaughter occurred when the defendant got out of the car and went to get the pole suggests the court believed defendant did not have the intent and objective to kill Victoria until that point.